UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES L. FONVILLE, :
:
      Plaintiff, :
:
: Civil Action No. 02-2353 (EGS)
  v. :
:
:
DISTRICT OF COLUMBIA, :
:
      Defendant.

## MEMORANDUM OPINION

Plaintiff, Charles Fonville, brings this action pursuant to the Fifth Amendment of the Constitution and 42 U.S.C. § 1983, alleging that he was deprived of liberty and property interests when he was demoted from the rank of Commander in the Metropolitan Police Department ("MPD") to the rank of Captain without a hearing or any other means of redress.

Pending before the Court is defendant's motion for summary judgment. Upon consideration of defendant's motion, the response and reply thereto, and the entire record, the Court determines that plaintiff's claims are not barred by administrative claim preclusion, that he had a property interest in the Commander position, and that plaintiff satisfies the standard for a reputation-plus claim. Therefore, defendant's motion for summary judgment is **DENIED**.

## I.  BACKGROUND

Plaintiff joined the MPD in 1972.  Plaintiff's Opposition ("Opp.") at Ex. 18.  He was promoted to Captain in 1995 and, on March 7, 1999, he was promoted directly from Captain to Commander, skipping over the rank of Inspector.  Opp. at Ex. 21, Ex. 18.

Later in 1999, plaintiff was involved in an incident with officers of the Federal Protective Service ("FPS"), in which the FPS officers claimed that plaintiff was parked illegally.  Compl. at ¶¶ 8-9.  Plaintiff, off-duty and in plain clothes at the time, was arrested for assaulting a police officer.  Compl. at ¶¶ 8, 12-15.  He was handcuffed and detained in an FPS vehicle for two hours before eventually being released.  *Id.*  Plaintiff was never charged with any crime nor did he receive a parking or traffic citation.  Compl. at ¶ 16.  After a thorough investigation of the incident, the MPD Office of Internal Affairs determined that plaintiff did not engage in conduct unbecoming of a police officer and that the allegations of assault were unfounded.  Opp. at Ex. 8.

On November 29, 1999, Chief Ramsey reviewed the investigation of the incident and demoted plaintiff to the rank of Captain.  Dep. of C. Fonville, Defendant's Motion ("Def.") at Ex. D at 92-92; Dep. of C. Ramsey, Opp. at Ex. 6 at 158.  The demotion was reported in the *Washington Post* and the *Washington Times* on November 30, 1999.  Opp. at Ex. 11.  The articles

attributed comments to Chief Ramsey that plaintiff had engaged in "unacceptable behavior" and conduct that "was not consistent with what I expect from a command member of my staff." *Id.* Chief Ramsey did not deny making those statements. Opp. at Ex. 5.

After his demotion, plaintiff was transferred to the Third District to serve as a patrol section captain, and he decided to retire after he completed a year in grade based on the date of his promotion to Commander. Fonville Dep. at 86-89. Plaintiff testified that he felt belittled and humiliated by the demotion, that he could not continue working as a supervisory officer, and he had no choice but to retire. *Id.* at 90-91.

Plaintiff appealed his demotion to the Office of Employee Appeals ("OEA") in December of 1999. In a three page motion to dismiss, defendant argued that, as a matter of law, plaintiff was an "at will" employee and, therefore, he had no right to appeal his demotion. Opp. at Ex. 13 (citing District Personnel Manual ("DPM") § 872.5 (providing that Assistant Chiefs of Police, Commanders, and Inspectors are positions from which officers may be demoted at the will of the Chief of Police)). OEA set a briefing schedule on the jurisdictional issue and stayed all other proceedings, even though plaintiff had already served discovery requests upon defendant. Opp. at Ex. 14, 15. In his response to defendant's motion, plaintiff argued that DPM § 872.5 is invalid because it conflicts with D.C. Code §§ 1-616.51 and 1-

616.52, which provides that the only three positions to serve at the pleasure of the Mayor were Assistant Chiefs, Deputy Chiefs of Police, and Inspectors.  Opp. at Ex. 16.  Defendant replied with a brief that raised new factual issues and provided new evidence, including the affidavit of Lieutenant Richard F. Mattiello, which it argued proved that the Deputy Chief and Commander positions were the same.  Opp. at Ex. 17.  Based solely on these briefings, OEA held that it lacked jurisdiction and dismissed that case.  Def's Mot at Ex. E.  Plaintiff timely filed the instant case after OEA's decision became final.

## II. DISCUSSION

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R.

Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

Defendant raises three arguments in support of its motion for judgment as a matter of law.  First, defendant argues that plaintiff's complaint is barred by administrative claim preclusion.  Defendant next contends that even if the OEA's decision does not preclude plaintiff's claim, the Court must conclude as a matter of law that plaintiff was an at-will employee and, therefore, he is not entitled to due process. Finally, defendant argues that plaintiff's liberty interest argument fails as a matter of law because any public statements attributed to defendant do not satisfy the standard to maintain a "reputation plus" claim.  None of these arguments persuades the Court that summary judgment is appropriate.

**A.   The OEA administrative judge's findings that the Commander position is "at will" do not preclude litigation of that issue in this Court**

Unlike Title VII claims, administrative agency decisions have preclusive effect for employment discrimination claims raised pursuant to 42 U.S.C. § 1983.  *University of Tennessee v. Elliot*, 478 U.S. 788 (1986).  Administrative agency determinations are given preclusive effect when 1) the agency is acting in a judicial capacity, and 2) the litigants had a fair opportunity to litigate all the issues.  *Id.*  Actual litigation means that the parties have had the opportunity for a full

adversary hearing, including representation by counsel, presentation of direct and rebuttal evidence, presentation of witnesses and cross-examination of opposing-party's witnesses, and the opportunity to present arguments and briefs. *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987).

The parties agree that the OEA judge was acting in a judicial capacity. The issue of whether the Commander position was "at will," however, was not fully litigated in the administrative proceedings. In the OEA case, defendant introduced new arguments and evidence in its reply brief, including affidavits, to which plaintiff had no opportunity to respond. Opp. at Ex. 17. The discovery requests plaintiff had served on the defendant were unanswered because OEA stayed all proceedings in order to allow the filing of briefs on the jurisdictional issue. Opp. at Ex. 14, 15.

Defendant argues that the issue of whether the positions are equivalent is a purely legal issue and, therefore, further discovery is irrelevant. The OEA decision itself, however, refutes this point. The OEA found that the "Commander" position was the same as the "Deputy Chief" position because plaintiff failed to provide evidence that D.C. City Council intentionally omitted the Commander title when the Comprehensive Merit Personnel Act ("CPMA") was enacted. OEA decision, Def.'s Ex. E at 5. The OEA judge also relied upon "uncontested Agency

documents" indicating that the Commander position was introduced at the same time the deputy chief position was eliminated. *Id. See* Aff. of Richard F. Mattiello, Opp. at Ex. 18.  The Court cannot conclude that plaintiff could have fairly contested Agency documents when discovery was not permitted.  The Court is also troubled by the defendant's apparent contention that, even though it was the party that introduced the affidavit of MPD Lieutenant Richard F. Mattiello in its reply brief, the burden is on plaintiff to either attempt[1] to file a surreply or risk an AJ finding that Lieutenant Mattiello's statements were "uncontested" and a proper basis for the AJ's decision.

In sum, the issue of whether the Commander position was "at-will" has not been fully litigated, and the OEA's decision does not preclude litigation of plaintiff's claims before this Court.

**B.   Plaintiff has a valid property interest in his position because he was a Career Service employee of the District of Columbia, not an "at will" employee under D.C. Code § 4-104 (1992 Repl.)**

The Fifth Amendment of the United States Constitution prohibits the federal government from depriving its citizens of property without due process of law.  U.S. CONST. amend. V.  Under certain circumstances, an individual's employment with a state or local government constitutes a property interest.  *Cleveland*

---

[1]Surreplies are not allowed under OEA rules, *see* 6 D.C. Mun. Regs. § 611; nor were they permitted by the AJ's February 1, 2002 Order.

*Board of Education v. Loudermill*, 470 U.S. 532 (1985); *Board of Regents v. Roth*, 408 U.S. 564 (1972).  An individual has a property interest in his or her employment when that person has a legitimate claim of entitlement to the job.  *Roth*, 408 U.S. at 577.  The legitimate claim of entitlement of employment is not created by the United States Constitution, but by independent sources such as state statutes, agency rules or policies, or agreements.  *Roth,* 408 U.S. at 577-78.  At will employees are not vested with a protected property interest.  *See O'Donnell v. Barry*, 148 F.3d 1126, 1139 (D.C. Cir. 1998).

It is undisputed that the Comprehensive Merit Protection Act ("CMPA") creates a property interest for employees governed by it.  The CMPA establishes a Career Service for employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause.  D.C. Code §§ 1-608 & 1-616.51.  The Career Service includes employees who serve as sworn officers with the MPD.  D.C. Code § 1-608.01.  Under CMPA, employees can only be disciplined for cause and prior notice must be given.  *Id.*  Discipline specifically includes reduction in grade or demotions.  D.C. Code § 1-616.52(b).

At issue in this case is whether plaintiff's status changed from a Career Service employee to an "at-will" employee when he was promoted to the Commander position.  The Court is not persuaded that plaintiff underwent such a change in status.

In its motion, defendant summarily asserts that Chief Ramsey created the position of Commander as an "at will" position in 1998. When, in its motion, defendant refers to "this regulation" for Chief Ramsey's authority to do so, the Court presumes defendant relies upon District Personnel Manual ("DPM") § 872.5, which provides, "Assistant Chiefs of Police, Commanders, and Inspectors are excepted [from Career Service], who serve at the pleasure of the Chief of Police. The Chief of Police has the discretion to return Assistant Chiefs of Police, Commanders, and Inspectors to their previous rank/position."

This regulation, however, clearly conflicts with the enabling statute, which provided, at the time of plaintiff's demotion, "the Assistant and Deputy Chief of Police and Inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines." D.C. Code § 4-104 (1992 Repl.). When a regulation conflicts with its authorizing statute, the regulation is null and void. *See Davis v. Univ. of District of Columbia*, 603 A.2d 849, 853 (D.C. App. 1992); *Tenants v. D.C. Rental Housing Comm's*, 575 A.2d 1205, 1213 (D.C. App. 1990) ("a statute defines the rights of the [parties] and fixes the standard by which the rights are measured.")(internal quotations omitted). A statute that lists a specific position or makes specific exceptions is a "classic example of a legislative action that, by its very

nature, purports to be exclusive and thus clearly suggests that the legislature has thought about the particular matter omitted." *In re M.M.D.*, 662 A.2d 837, 852 (D.C. 1995).

In this round of pleadings, defendant does not argue that the Deputy Chief and Commander positions are the same. Rather, defendant maintains only that the OEA interpretation of the statute is "controlling." Defendant does not cite to any authority that supports its argument that OEA's interpretation is "controlling." Rather, defendant's cited authority stands for the familiar proposition that an agency's interpretation of a statute must be sustained if the interpretation is reasonable in light of the language and purpose of the statute. *Springer v. District of Columbia*, 743 A.2d 1213, 1218-19 (D.C. 1999).

Neither the OEA judge nor defendant has provided a reasonable explanation for the OEA's conclusion that "there was no conflict then between the statutory authority and the DPM regulations and there is no conflict now." OEA decision, Def.'s. Ex. E at 5. As noted above, the OEA judge relied on a incomplete record to make her determination that the Deputy Chief and Commander positions are the same.

Upon review of the entire record after completion of discovery, there is ample evidence that the positions are not equivalent. Opp. at 23-26. Although both positions occupy the same pay grade, the Court must also consider other aspects, such

10

as the duties of the position.  *See Goss v. George Washington Univ.*, 942 F. Supp. 659 (D.D.C. 1996).  MPD produced no documents in response to plaintiff's request for position descriptions for the Assistant Chiefs, Deputy Chiefs, and Inspectors.  The organization of the force, however, indicates that the Commander and Deputy Chief positions are not interchangeable.  For example, during the demise of the Deputy Chief position, most Deputy Chiefs were eliminated and replaced by Inspectors (a lower grade position), not Commanders.  Four other Deputy Chief positions were replaced by Assistant Chiefs of Police (a higher grade position).  These organizational changes indicate that the Chiefs who made those assignments did not equate the Deputy Chief position with Commander.

Additional organizational changes by Chief Ramsey provides further evidence that the Deputy Chief and Commander positions were not equivalent.  Some Commanders performed duties previously performed by Inspectors and Captains as opposed to Deputy Chiefs; some Assistant Chiefs performed duties previously done by Deputy Chiefs.  Opp. at Ex. 1, 5, 21.

The specific position plaintiff occupied as a Commander (Commander in the Operations Command, night hawk) had never been occupied by a Deputy Chief of Police.  The night hawk position had previously been performed by Captains.  The Operations Command was a new department and, therefore, it had never been

staffed with Deputy Chiefs, and the duties had never been performed by Deputy Chiefs.  There is no evidence that plaintiff's specific duties were equivalent to a Deputy Chief's duties.

In sum, review of the record indicates that the Deputy Chief and Commander positions are far from equivalent and that the statute and regulation conflict with one another.  There is no evidence that plaintiff became an "at-will" employee when he was promoted to Commander, and the Court concludes that he has a constitutionally-protected property interest in the Commander position.  Therefore, summary judgment is **DENIED** as to plaintiff's property interest claim.

### C. Summary judgment is inappropriate as to plaintiff's "reputation-plus" claim

The government's behavior while terminating an employee-employee relationship can implicate that employee's fifth amendment liberty interest.  *Roth*, 408 U.S. at 573; *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 338 (D.D.C. 1999).  Defamation and slander, standing alone, usually do not provide the basis for a constitutional violation under the due process clause.  *Roth,* 408 U.S. at 564.  A plaintiff may prevail, however, if he can demonstrate either a "reputation plus" claim, that is, defamation accompanied by an adverse employment action, or "foreclosure claims," in which the government's actions

foreclosed potential job opportunities.  *Roth*, 408 U.S. 572-76; *O'Donnell*, 148 F.3d 1126, 1440 (D.C. Cir. 1998); *Harrison v. Bowen,* 815 F.2d 1505, 1518 (D.C. Cir. 1987); *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 338 (D.D.C. 1999).  In this case, plaintiff appears to raise only a reputation-plus claim.[2] Compl. at ¶¶ 28-31.

When determining whether plaintiff can maintain a reputation plus claim, the Court must distinguish between comments that imply an inherent or persistent personal condition and those comments directed at plaintiff's job performance.  *Alexis*, 44 F. Supp. 2d at 339.  Accusations of dishonesty, commission of a serious felony, manifest racism, serious mental illness, or a lack of intellectual ability are examples of remarks that rise to the level of a constitutional violation.  *Harrison,* 815 F.2d at 1518.  On the other hand, statements about inadequate job performance are not sufficiently stigmatizing.  *Id.*

Defendant does dispute the defamatory potential of Chief Ramsey's statements that plaintiff engaged in "unacceptable behavior" and conduct inconsistent with what he expected from his command staff.  Defendant's only argument is that the statements do not rise to the level of a constitutional violation, but

---

[2]Defendant devotes some attention to the argument that plaintiff did not suffer from a foreclosure of job opportunities. Because plaintiff has asserted a reputation-plus claim, not a foreclosure claim, defendant's arguments are of marginal relevance.

rather are permissible commentary on plaintiff's performance. The Court cannot make that determination as a matter of law.

Chief Ramsey's statements are not simply comments on plaintiff's performance of his job duties. First, these comments were made about behavior that occurred when plaintiff was off-duty, implying a broad-based character flaw. Second, the comments did not suggest that plaintiff's job performance was unsatisfactory, but rather that he was "inherently incapable" of performing his duties. *Alexis*, 44 F. Supp. 2d at 339. Chief Ramsey's remarks on plaintiff's off-duty behavior indicated that plaintiff had an immutable behavioral problem and was unfit for a position of command. The comments were certainly capable of stigmatizing plaintiff and, therefore, the Court cannot grant summary judgment on plaintiff's reputation-plus claim.

## III.  CONCLUSION

In sum, defendant has not persuaded the Court that it is entitled to judgment as a matter of law on any of plaintiff's claims. Therefore, defendant's motion is **DENIED.** A status hearing is scheduled for October 12, 2006 at 12:30 p.m. to discuss further proceedings in this case.


**Signed by:     EMMET G. SULLIVAN**
**                UNITED STATES DISTRICT JUDGE**
**                August 22, 2006**